UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HOMELESS HELPING HOMELESS,
INC.,

    Plaintiff,

v.                                               CASE NO. 8:15-cv-1219-T-23AAS

CITY OF TAMPA, FLORIDA,

    Defendant.
_____/

## **ORDER**

Challenging an ordinance that bans in parts of Tampa, Florida, the solicitation of "donations or payment," Homeless Helping Homeless, Inc., sues (Doc. 42) for an injunction against the City of Tampa's enforcing the ordinance and for a declaration that the ordinance unconstitutionally infringes the right of free speech protected both by the First Amendment to the United States Constitution and by Article I, Section 4, of the Florida Constitution. Under Rule 12(c), Federal Rules of Civil Procedure, Homeless Helping Homeless moves (Doc. 47) for a judgment on the pleadings.

*Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), an opinion accompanied by three distinct concurring opinions joined by a total of seven justices and an opinion

adjudicating a sign-ordinance dispute, appears to govern this action. In other words, an opinion that resolves a dispute about parishioners temporarily planting some small signs directing people to a church service is written in such sweeping terms that the opinion appears to govern a dispute about an ordinance that regulates face-to-face demands for money from casual passers-by.

This action illustrates (as *Reed* illustrates) the frailties of governing discrete local issues, which are otherwise decided by local officials subject to periodic election, by force of intermittently issued decrees, which are conveyed as constitutional directives; which are issued by a majority (or, sometimes, only a plurality) of nine lawyers serving during "good behavior"; and which are uttered in the course of resolving a different dispute in another locality. Nonetheless, this order dutifully applies *Reed* and resolves the present dispute against the City and in favor of Homeless Helping Homeless. Without *Reed*, which governs for the moment (despite prominently featuring the badges of a transient reign), I would follow Judge Easterbrook in *Norton v. City of Springfield*, 768 F. 3d 713 (7th Cir. 2014), and similar decisions, and I would uphold the City's ordinance, which results from a constructive and demonstrably benign legislative attempt to manage fairly and humanely a tangible and persistent problem in a manner narrowly and artfully tailored to fit the compelling facts in the affected community.

**BACKGROUND**

**1. Homeless Helping Homeless**

Homeless Helping Homeless, a charity based in Tampa, offers emergency shelter to the homeless.  (Doc. 42 ¶ 14)  According to the allegations in the amended complaint, Homeless Helping Homeless quarters approximately seventy persons every night, feeds approximately three thousand persons every month, distributes hygiene kits, and assists persons "in obtaining social services, educational assistance, and permanent employment."  (Doc. 42 ¶ 16)  Homeless Helping Homeless's mission "is to break societal stereotypes by giving homeless men and women the opportunity to better their own lives thorough service."  (Doc. 42 ¶ 14)

To "carry out its operations and fulfill its mission," Homeless Helping Homeless relies on staff and volunteers to pursue private money.  (Doc. 42 ¶ 17) From 2011 to 2013, Homeless Helping Homeless's money-raising focused on downtown Tampa and Ybor City[1] because each neighborhood offers both "a broad audience" and "wide sidewalk space to solicit safely without causing disruptions." (Doc. 42 ¶ 32)  In 2013, as a result of soliciting in downtown Tampa and Ybor City, Homeless Helping Homeless raised more than $26,000.  (Doc. 42 ¶ 32)

---

[1] Ybor City, a historic district in Tampa, adjoins downtown Tampa to the east-northeast.

**2. Section 14-46 of the Tampa Municipal Code**

Beginning in May 2013, the Tampa City Council held meetings about public solicitation for money. (Doc. 56 at 9)  At one meeting, the president of a college in Tampa stated that the problem of "[v]agrancy and panhandling is more than an inconvenience to our 8,000 students and 400 employees.  It is [a] distraction to our learning process and our core operations." (Doc. 45-10 at 3; Doc. 56 at 9)  The owner of a business in Tampa stated that "there are some things that I believe we could [do] to support a more usable environment for all community members.  One of those could be the discussion of a strict panhandling exclusion zone in Ybor City and downtown." (Doc. 45-10 at 5; Doc. 56 at 9–10)  Others agreed. (Doc. 56 at 8–10)  From May to July 2013, the Tampa City Council discussed enacting an ordinance to create zones, "particularly in tourist areas," in which a person "could be free from all types of [oral] unsought solicitation." (Doc. 56 at 10)

In July 2013, the Tampa City Council enacted Ordinance 2013-95, which amends Section 14-46 of the Tampa Municipal Code.  Ordinance 2013-95, among other changes to Section 14-46, adds Section 14-46(b), which in downtown Tampa and Ybor City, among some other specified locations, bans the solicitation of "donations or payment."  Section 14-46(b) contains a limited exception permitting "solicitation that only involves holding a sign."  Also, Section 14-46(d) exempts from Section 14-46 "business operations" conducted in "an enclosed building" and

"persons operating under franchises, concessions, or pursuant to temporary license agreements or concessions for special events." A violation of Section 14-46(b) subjects a person to a fine or imprisonment.

After the enactment of Ordinance 2013-95, Section 14-46 states:

> (a) It shall be unlawful for any person in the City of Tampa to solicit donations or payment, or to exhibit oneself for such purpose, by:
>
>   (1) Any act or language constituting an express or implied threat of injury to any person or of damage to or loss of any property owned by or in lawful possession of the solicited person;
>
>   (2) Endeavoring to maintain contact with the solicited person and continuing to verbally demand, ask or beg for, or to solicit, donations or payment from any person after the solicited person has made a negative response to an initial demand or solicitation; or
>
>   (3) Any act intended to impede the passage or free movement of the solicited person. Passage or free movement applies to persons on foot or bicycles, in wheelchairs or operating motor vehicles or persons attempting to enter or exit motor vehicles.
>
> (b) It shall be unlawful in the City of Tampa for any person to solicit donations or payment when either the solicitor or the person being solicited is located in, on, or at any of the following locations or premises thereof:
>
>   (1) Downtown/Ybor Area Prohibited Zone;
>
>   (2) Bus, trolley stop, or transit stop;
>
>   (3) Sidewalk cafe; or
>
>   (4) Area within fifteen (15) feet (in any direction) of an automatic teller machine or entrance to a financial institution.
>
> This section does not apply to solicitation that only involves holding a sign.

>   (c) The following words and phrases, when used in this section, shall have the following meanings:
>
>   >   (1) *Solicit* means attempts in person to obtain charitable contributions, or attempts to sell any good or service, for the benefit of the solicitor or on behalf of an individual or organization.
>   >
>   >   (2) "*Downtown/Ybor Area Prohibited Zone*" means that land area bounded on the north by West Palm Avenue (to the northern edge of pavement), bounded on the west by North Boulevard (to the western edge of pavement) until North Boulevard crosses the Hillsborough River, then by the Hillsborough River (to the water's edge), bounded on the south by Garrison Channel (to the water's edge), and bounded by the east by Ybor Channel (to the water's edge) as far north as E. Harbor Street (the northern edge of pavement) then west until the eastern edge of pavement of N. 14th Street, then north until the southern edge of pavement of Adamo Dr., then east until the eastern edge of 26th Street bounded on the east by 26th Street (to the eastern edge of pavement) . . . .
>
>   (d) This section shall not apply to persons operating under franchises, concessions, or pursuant to temporary license agreements or concessions for special events, or business operations conducted entirely within an enclosed building or in a permanent structure for which a building permit is required, or operating on private property.
>
>   (e) Violations of this section shall be punishable as provided in Tampa Code section 1-6.

(Doc. 45-1 at 4–5) (emphasis in original)  This action challenges only Section 14-46(b) and not Section 14-46(a), which remains mostly unchanged by Ordinance 2013-95.  (See Doc. 42 ¶¶ 39–49)

In the preamble to Ordinance 2013-95 and in the City's response to the motion for a judgment on the pleadings, the City justifies Section 14-46(b) both as a means to promote downtown Tampa and Ybor City "as tourist destinations and economic

- 6 -

engines for the City" and as a means to protect the City's "citizens and visitors in areas where they may be or perceive themselves to be vulnerable [or] unable to leave." (*See* Doc. 45-6 at 7–8; Doc. 56 at 8)

**3. This Action**

Suing for injunctive and declaratory relief,[2] Homeless Helping Homeless alleges that, because of Section 14-46(b)'s ban against soliciting for money in downtown Tampa and Ybor City, Homeless Helping Homeless's staff and volunteers no longer solicit money in those areas. (Doc. 42 ¶ 35) According to the amended complaint, Homeless Helping Homeless "has lost tens of thousands of dollars" and "has been forced" to reduce service and to abandon plans for additional service. (Doc. 42 ¶¶ 35, 36) Moving for a judgment on the pleadings, Homeless Helping Homeless argues that Section 14-46(b) is a content-based regulation of speech that cannot withstand strict scrutiny under the First Amendment. (Doc. 47 at 1) In response, the City argues that Section 14-46(b) "is not facially content based" and is not subject to strict scrutiny. (Doc. 56 at 1, 3)

---

[2] Homeless Helping Homeless sues for injunctive and declaratory relief under 42 U.S.C. § 1983 (Count I) and for a declaratory judgment under 28 U.S.C. § 2201 and under Section 86.021, Florida Statutes (Count II).

## DISCUSSION

**1. Rule 12(c)**

Rule 12(c) states, "After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Rule 12(c) permits a judgment on the pleadings if the moving party demonstrates that "no issues of material fact exist" and that "the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962, 965 (11th Cir. 2014) (quoting *Cunningham v. Dist. Attorney's Office for Escambia Cty.*, 592 F.3d 1237, 1255 (11th Cir. 2010)).

**2. First Amendment Analysis**

 **A. Soliciting money is protected by the First Amendment.**

The First Amendment states, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."[3] Soliciting "donations or payment" is a form of speech protected by the First Amendment. *See Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980) ("[C]haritable

---

[3] Article I, Section 4, of the Florida Constitution states, "No law shall be passed to restrain or abridge the liberty of speech or of the press." "The scope of the protection accorded to freedom of expression in Florida under article I, section 4 is the same as is required under the First Amendment." *Dep't of Educ. v. Lewis*, 416 So. 2d 455, 461 (Fla. 1982).

appeals for funds, on the street or door to door, involve a variety of speech interests — communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes — that are within the protection of the First Amendment."). Through the due process clause of the Fourteenth Amendment, the First Amendment applies to a municipal government such as the City. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1268 (11th Cir. 2004).

### B. Section 14-46(b) regulates speech in a traditional public forum.

Section 14-46(b) regulates soliciting money in areas, including downtown Tampa and Ybor City, that contain traditional public forums such as a public street, a public sidewalk, or a public park. *McCullen v. Coakley*, 134 S. Ct. 2518, 2529 (2014). Because of the historic role as a venue open to the public for discussion and debate, a traditional public forum receives special protection under the First Amendment. *McCullen*, 134 S. Ct. at 2529.

In a traditional public forum, a regulation that impedes speech based on the content of the speech must satisfy strict scrutiny, which means that the regulation is constitutional only if the regulation employs the least restrictive means of advancing a compelling governmental interest. *McCullen*, 134 S. Ct. at 2530 (citing *United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 813 (2000)). A content-based regulation of speech is "presumptively unconstitutional." *Reed*, 135 S. Ct. at 2226. In contrast, a regulation imposing only a reasonable and content-neutral restriction on the time,

place, and manner of speech must withstand only intermediate scrutiny, which permits a regulation both narrowly tailored to serve a significant governmental interest and "leav[ing] open ample alternative channels for communication of the information." *McCullen*, 134 S. Ct. at 2529–30.

### C. Section 14-46(b) is a content-based regulation of speech.

Resolving a First Amendment challenge to a town's restricting the display of outdoor signs, *Reed v. Town of Gilbert* holds that a regulation of speech is content-based if the regulation applies to speech "because of the topic discussed or the idea or message expressed."[4]  135 S. Ct. at 2227.  Under the ordinance challenged in *Reed*, a less restrictive set of rules applied to a sign conveying a message "designed to influence the outcome of an election" than applied to a sign conveying the location and time of a church service.  135 S. Ct. at 2224–25.  *Reed* holds that the town's code was content-based because the application of rules to a sign depended "entirely on the communicative content of the sign."  135 S. Ct. at 2227, 2230.

Whether Section 14-46(b) applies to speech depends entirely on the expressed message (i.e., a solicitation for "donations or payment").  Section 14-46(b) imposes no penalty if a speaker in a public park in downtown Tampa or on a sidewalk in Ybor City asks a passer-by about a political issue or offers a passer-by a brochure

---

[4] Also, *Reed* holds that a regulation of speech "targeted at specific subject matter is content-based even if it does not discriminate among viewpoints within that subject matter." 135 S. Ct. at 2230.

about a church or about a show at a carnival.  If a speaker asks a passer-by to sign a petition, Section 14-46(b) imposes no penalty.  But, if a speaker asks a passer-by for "donations or payment," Section 14-46(b) criminally penalizes the speaker.[5]  Further, a regulation of speech is content-based if the regulation requires "enforcement authorities to examine the content of the message that is conveyed to determine whether a violation has occurred." *McCullen*, 134 S. Ct. at 2531.  Section 14-46(b) punishes speech based not at all on the place, and manner of the speech but based decidedly and exclusively on the content of the speech, a fact that subjects Section 14-46(b) to strict scrutiny.[6]

In the City's response to the motion for a judgment on the pleadings, the City states that the Tampa City Council's meetings about Section 14-46(b) were "replete with concern about the plight of the homeless and how to assist them" and lacked "discussion on keeping [the homeless] out of sight or banishing them."  (Doc. 56 at 10)  Also, the City states that a representative of an organization benefitting the

---

[5] Although the City describes Section 14-46(b) as a regulation of oral solicitation, Section 14-46(b) applies also to unspoken solicitation. Section 14-46(c) defines a solicitation as an "attempt[] . . . to obtain charitable contributions." Section 14-46(b) exempts a solicitation that "only involves holding a sign," but the exemption fails to apply to an unspoken solicitation that does not "involve[] holding a sign." Thus, if a panhandler on a public sidewalk in Ybor City extends his hand to a passer-by and intends the gesture as an "attempt[] . . . to obtain charitable contributions," Section 14-46(b) imposes a penalty.

[6] Other courts applying *Reed* have held that bans on solicitation are content-based regulations of speech subject to strict scrutiny. *See Norton v. City of Springfield, Ill.*, 806 F.3d 411, 411–13 (7th Cir. 2015) (Easterbrook, J.); *Thayer v. City of Worcester*, 144 F. Supp. 3d 218, 232–34 (D. Mass. 2015) (Hillman, J.); *McLaughlin v. City of Lowell*, 140 F. Supp. 3d 177, 185–87 (D. Mass. 2015) (Woodlock, J.); *Browne v. City of Grand Junction*, 136 F. Supp. 3d 1276, 1288–91 (D. Colo. 2015) (Arguello, J.).

homeless participated in the meetings about Section 14-46(b). (Doc. 56 at 10) However, the Tampa City Council's solicitude toward the interests of the homeless and the City Council's amiable reception of advocates for the homeless are, especially after *Reed*, unresponsive to a constitutional attack on Section 14-46(b) as impermissibly content-based. To the extent that the City argues that Section 14-46(b) is content-neutral because the City actively accommodates the homeless, the argument fails.

Before *Reed*, some circuit courts held that, even if a regulation "facially differentiates between types of speech," the regulation was content-neutral if the regulation was "justified without reference to the content of regulated speech." *Brown v. Town of Cary*, 706 F.3d 294, 301–02 (4th Cir. 2013) (Diaz, J.). In contrast, other circuit courts (including the Eleventh Circuit) held that the inquiry into whether a regulation of speech was content-based focused on the regulation's "own terms" rather than the regulation's rationale. *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1259 n.8 (11th Cir. 2005); *accord Neighborhood Enterprises, Inc. v. City of St. Louis*, 644 F.3d 728, 737 (8th Cir. 2011) (Smith, J.).

*Reed* rejects the argument that a "regulation is content neutral — even if it expressly draws distinctions based on . . . communicative content — if those distinctions can be justified without reference to the content of the regulated speech." 135 S. Ct. at 2228 (internal quotation marks omitted). Instead, *Reed* holds that a

facially content-based regulation is subject to strict scrutiny "regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained in the regulated speech." 135 S. Ct. at 2228 (internal quotation marks omitted). Thus, under *Reed*, the City's otherwise benevolence toward the homeless is immaterial in determining whether Section 14-46(b) imposes an impermissibly content-based infringement of the right to free speech. *See* 135 S. Ct. at 2228.

### D. Section 14-46(b) fails strict scrutiny.

Because Section 14-46(b) imposes in a traditional public forum a content-based regulation of speech, Section 14-46(b) is presumptively unconstitutional. *See Reed*, 135 S. Ct. at 2226. To withstand strict scrutiny, the City must demonstrate that Section 14-46(b) constitutes the least restrictive means of advancing a compelling governmental interest. *See McCullen*, 134 S. Ct. at 2530. However, in the answer to the amended complaint, the City admits that no compelling governmental interest supports Section 14-46(b). (Doc. 42 ¶ 42; Doc. 45 ¶ 42) And — with admirable candor — the City forbears the assertion that Section 14-46(b) is the least restrictive means of advancing any governmental interest.[7]

---

[7] Arguing for denial of the motion for a judgment on the pleadings, the City cites *United States v. Kokinda*, 497 U.S. 720 (1990), and *Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640 (1981). (Doc. 56 at 3–7) Although upholding a regulation infringing the right to solicit money, *Kokinda* examines the regulation "only for reasonableness" because the regulation applied in a zone that was "not expressly dedicated . . . to any expressive activity." 497 U.S. at 727, 730. And, unlike Section 14-46(b), the challenged regulation in *Heffron* neither applied in a traditional public

## CONCLUSION

Accordingly, Homeless Helping Homeless's motion (Doc. 47) for a judgment on the pleadings is **GRANTED**.  Homeless Helping Homeless's motion (Doc. 48) for a preliminary injunction is **DENIED AS MOOT**.  The clerk is directed to enter a judgment for Homeless Helping Homeless and against the City (1) **DECLARING** that Section 14-46(b) unconstitutionally infringes the right of free speech protected by the First Amendment to the United States Constitution and by Article I, Section 4, of the Florida Constitution and (2) **PERMANENTLY ENJOINING** the City from enforcing Section 14-46(b).  Also, the clerk is directed to terminate any pending motion and to close the case.

ORDERED in Tampa, Florida, on August 5, 2016.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

forum nor directly targeted solicitation of "donations or payment." In *Heffron*, the challenged regulation applied in a limited public forum — a state fair that required an attendee to pay a fee for admission — and provided only that a person selling merchandise must sell the merchandise from "a duly-licensed location" at the fair. 452 U.S. at 643, 655.